# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DWAYNE HARRIS, | Case No. 1:24-cv-1215 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge James E. Grimes, Jr. |
| MISTY MACKEY, Warden, *et al.*, | |
| Defendants. | |

# OPINION AND ORDER

Dwayne Harris, an inmate at the Lake Erie Correctional Institution, filed this action without a lawyer against Warden Misty Mackey, Safety and Sanitation Officer Mr. Dunbar, Core Civic President Damon T. Hininger, Ohio Department of Rehabilitation and Correction Director Annette Chambers-Smith, former United States Environmental Protection Agency Administrator Andrew R. Wheeler, and current United States EPA Administrator Michael S. Regan. Plaintiff claims that he is being exposed to black mold, asbestos, aggressive geese, and goose feces at Lake Erie Correctional. Further, he claims that prison officials refuse to provide him with adequate medical treatment for fifteen medical conditions. He asserts claims under 42 U.S.C. § 1983, the Administrative Procedure Act, the Clean Water Act, the Clean Air Act, and the Toxic Substances Control Act. He seeks monetary damages and injunctive relief.

## STATEMENT OF FACTS

The complaint contains very few facts. It is composed almost entirely of legal argument. Plaintiff indicates that he arrived at Lake Erie Correctional on February 21, 2024. Lake Erie Correctional is a private prison owned and operated by Core Civic. Lake Erie Correctional houses State prisoners under contract with the ODRC.

Plaintiff states that the Lake Erie Correctional prison compound is infested with wild geese that behave aggressively toward people. Further, he states that the geese deposit feces on the basketball courts, handball courts, the baseball field, and workout courts. Inmates in these areas may step on feces and bring it into the prison on their shoes. Plaintiff contends that these circumstances create a hazard to his health. Also, he states that Lake Erie Correctional has black mold and asbestos. He indicates that the ODRC has a policy requiring unit staff and administrative deputy officers to conduct daily sanitation inspections in the housing units. Because of this policy, he contends that Defendants have personal knowledge of the conditions.

Also, Mr. Harris alleges that he was been denied adequate medical treatment for cancer, headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes, stomach virus, diarrhea, abdominal pain, fever, a defective immune system, cryptosporidium, giardia, and cryptosporidiosis. He claims this denial of care violates his Eighth Amendment rights.

Mr. Harris seeks an order requiring Defendants to arrange for him to be evaluated by a qualified physician and to follow that physician's recommended

treatment. Additionally, he seeks a transfer to a level 2 institution and an award of monetary damages.

## ANALYSIS

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not

3

meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## I. Federal Defendants

Plaintiff brings claims against former United States Environmental Protection Agency Administrator Andrew R. Wheeler and current the agency's current Administrator Michael S. Regan under the Administrative Procedure Act, 5 U.S.C. § 706(1); the Clean Water Act, 33 U.S.C. § 1365(a)(2), the Clean Air Act, 42 U.S.C. § 7604(a)(1)(2), 42 U.S.C. § 7607(a); and the Toxic Substances Control Act, 15 U.S.C. § 2601(b)(1)(2). As an initial matter, Mr. Wheeler served as the Administrator of the EPA from 2019 to 2021. Plaintiff did not arrive at Lake Erie Correctional until February 2024, some three years after Mr. Wheeler left office. Plaintiff failed to allege facts that establish a claim against Mr. Wheeler or standing to pursue any such claim.

### I.A. Clean Water Act

Plaintiff purports to bring suit under a provision of the Clean Water Act that permits a private citizen to sue on his own behalf. Broadly, the Act states that, with certain exceptions, the discharge of any pollutant by any person without an appropriate permit shall be unlawful. 33 U.S.C. § 1311. The Clean Water Act defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A). The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or

discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water," *Id.* § 1362(6). "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14). Finally, "'navigable waters' means the waters of the United States, including territorial seas." *Id.* § 1362(7). Therefore, a viable claim under the Clean Water Act requires: (1) the addition (2) of a pollutant (3) to navigable waters (4) from a point source (5) by a person. 33 U.S.C. §§ 1311(a), 1362(6), (7), (12), (14) & (16).

Plaintiff's complaint makes no mention, directly or by inference of any person discharging a pollutant through a point source (or otherwise) into a navigable body of water. The Clean Water Act has no application to the facts alleged.

**I.B. Clean Air Act**

For similar reasons, Plaintiff's claim under the Clean Air Act fails as a matter of law. The federal Clean Air Act "creates a complex regulatory scheme designed 'to protect and enhance the quality of the Nation's air resources.'" *Sierra Club v. Jackson*, 648 F.3d 848, 851 (D.C. Cir. 2011) (quoting 42 U.S.C. § 7401(b)(1)). To regulate air pollution, Congress developed a statutory partnership between the States and the federal government.

EPA identifies air pollutants and sets national ambient air quality standards ("NAAQS"). 42 U.S.C. § 7409(b). The States adopt one or more State Implementation Plans ("SIPs") showing how they will meet and maintain the NAAQS within their

territory. 42 U.S.C. § 7407(a). States retain primary responsibility to control air pollution through SIPs. *Id.* With EPA approval, a State's SIP is added to the Federal Register and becomes federal law. *See* 40 C.F.R. § 52.1870 (Ohio's SIP).

If a State does not enforce its SIP, EPA can choose to enforce the SIP against violators by issuing an order to comply with the SIP, imposing an administrative penalty, or bringing a civil action to force compliance. 42 U.S.C. §§ 7413(a)(1)(A)–(C). Failing that, if EPA first finds that any requirement of an approved plan is not being implemented, it must sanction the State. 42 U.S.C. § 7509(a)(4).

Ordinary citizens may bring a civil action on their own behalf against the EPA Administrator where he has allegedly failed to perform any act or duty under this statute which is not discretionary. 42 U.S.C. §§ 7604(a)(2); *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 876–77 (6th Cir. 2016) (citing 33 U.S.C. § 1365(a)(2) and *Department of Energy v. Ohio*, 503 U.S. 607, 615 (1992)) (analyzing the Clean Water Act's citizen suit provision, which has language identical to the Clean Air Act). "A duty is non[-]discretionary under the Clean Air Act if it is 'clear-cut' and requires the Administrator to act by a 'date-certain deadline.'" *Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020).

Plaintiff's claim under the Clean Air Act has multiple deficiencies. First, he has not identified a particular pollutant that the prison is placing into the air in such quantities that it violates State or federal air quality standards. On that basis alone, he fails to state a claim under the Clean Air Act.

6

Further, Plaintiff has not identified a non-discretionary duty that the EPA Administrator failed to perform. He states only that the EPA Administrator is responsible for inspecting Lake Erie Correctional for violations of the Act. However, the Clean Air Act does not impose a "clear-cut" duty for EPA to enforce a SIP. To the contrary, the general federal enforcement provision that provides EPA with power to enforce a SIP, 42 U.S.C. § 7413, is discretionary. EPA must "find[ ] that any person has violated" a requirement in a SIP before seeking enforcement. 42 U.S.C. §§ 7413(a)(1)–(3) & (5). Finding a violation involves a discretionary action. *See Askins*, 809 F.3d at 876–77 (citizens could not sue under the Clean Water Act where EPA first had to choose to hold a hearing to determine whether a State was violating that provision of the Clean Water Act); *City of Seabrook v. Costle*, 659 F.2d 1371, 1374–75 (5th Cir. Unit A Oct. 1981) (noting that the requirement that EPA first "find" a violation made Section 7413 a non-discretionary duty). Second, although EPA must notify the violator and the State after it officially finds a violation, it "may" choose to enforce the SIP's requirements and pursue remedies against the violators. 42 U.S.C. §§ 7413(a)(1)(A)–(C). The use of the permissive term "may" indicates that this action is discretionary. *Biden v. Texas*, 597 U.S. 785, 802 (2022) (quotations omitted). EPA does not have a non-discretionary duty to inspect a State correctional institution and act against it. For these reasons, Plaintiff fails to state a claim under the Clean Air Act.

### I.C. Administrative Procedures Act

Plaintiff asserts a claim under the Administrative Procedure Act. The APA allows for judicial review of federal agency actions where an action is "made

7

reviewable by statute" or it is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; see *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 632 (6th Cir. 2016). While agency actions may be reviewable under the APA, the opposite is true for refusals to take enforcement steps. *Arizona v. Biden*, 31 F.4th 469, 478 (6th Cir. 2022); *Heckler v. Chaney*, 470 U.S. 821, 831, (1985). An agency's choice not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's discretion. *Id*. Plaintiff has made no showing that would warrant departing from this general rule. Nor does he have a right under the APA to have an agency hold someone else liable.

### I.D. Toxic Substances Control Act

Finally, the Toxic Substances Control Act, 15 U.S.C.A. § 2061(a), does not apply to this case. It authorizes the federal government to file suit against an imminently hazardous consumer product for seizure of the product or against any person who is a manufacturer, distributor, or retailer of such a product, or both. The term "imminently hazardous consumer product" means "a consumer product which presents imminent and unreasonable risk of death, serious illness, or severe personal injury." 15 U.S.C. § 2061(a). Plaintiff does not allege that he purchased any product from any Defendant that does or should meet this definition. Simply, he fails to state a claim under this statute.

### II. State Defendants

Plaintiff asserts Eighth Amendment claims under 42 U.S.C. §1983 against the ODRC Director, the prison's Warden, its Safety and Sanitation Officer, and the President of Core Civic. He brings two claims under the Eighth Amendment. First,

8

Mr. Harris claims that the prison contains black mold, asbestos, and aggressive geese that deposit feces on the outdoor recreation areas. Second, he asserts generally that he is being denied appropriate medical care for a number of medical conditions.

**II.A. ODRC Director**

Plaintiff fails to state a claim against ODRC Director Annette Chambers-Smith. He brings this action against her in her individual capacity. He claims Lake Correctional has conditions that pose health threats to inmates at the facility. He names Ms. Chambers-Smith as a Defendant because she oversees the operation of all State-run prisons in Ohio. Lake Erie Correctional, however, is not a State-run prison. It is a private prison owned and operated by Core Civic. It accepts Ohio prisoners under contract with the State of Ohio. Ms. Chambers-Smith is not directly responsible for the maintenance and operation of Lake Erie Correctional.

Moreover, even if she were considered to have authority over personnel at Lake Erie Correctional, Plaintiff cannot hold her individually liable for the actions or omissions of personnel at the facility. Plaintiff cannot establish the liability of any Defendant in his or her individual capacity absent a clear showing that that particular person was personally involved in the actions which form the basis of the alleged constitutional violation *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff's theory of liability as to Ms. Chambers-Smith cannot be based solely on her position of authority or her role as a supervisor. *Iqbal*, 556 U.S. at 676. But he does not allege facts suggesting that she was personally involved in any of the situations described in the complaint. Therefore, she cannot be held personally liable.

9

**II.B. Core Civic President, Warden, and Safety and Sanitation Officer**

Plaintiff asserts two Eighth Amendment claims against Mr. Hininger, Mr. Dunbar and Ms. Mackey. The Eighth Amendment imposes a constitutional limitation on the power of the States to punish those convicted of crimes. The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). These protections, however, do not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). Prisoners are not entitled to unfettered access to the medical treatment of their choice. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement that constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9–10 (requiring extreme or grave deprivation).

In *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Supreme Court set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment that the Eighth Amendment guards against. First, a plaintiff must plead facts which, if true, establish that a sufficiently

10

serious deprivation has occurred. *Id*. Routine discomforts of prison life do not suffice. *Hudson*, 503 U.S. at 8. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement implicates the protections of the Eighth Amendment. *Id*. at 9. Also, a plaintiff must establish a subjective element showing that the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only where both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff claims that prison officials refused to provide him with adequate medical treatment for his chronic illnesses which he lists as: "diagnosed with Cancer; Suffer Headaches; Sinus Problems; Blurred Vision; Breathing Difficulty' Irritated Eyes; Stomach Virus; Diarrhea; Abdominal Pain; Respiratory; Fever; Defective Immune System; Cryptosporidium; Giardia; [and] Cryptosporidiosis . . . ." (ECF No. 1, PageID #3.) But this allegation is wholly conclusory and fails to make a showing that he has suffered a constitutional violation resulting from a failure to treat his medical conditions. His complaint provides no information on what treatments he was or was not provided or why those treatments or the lack of them constitute deliberate indifference. Nor does he connect any Defendant to his diagnosis and treatment. Indeed, the Warden, the Safety and Sanitation Officer, and the President of Core Civic are not immediately implicated in the diagnosis and

11

treatment of inmate illnesses.  Without more information, Plaintiff failed to state a claim against these Defendants under the Eighth Amendment for his medical care.

Next, Plaintiff claims that aggressive wild geese inhabit the prison grounds and deposit feces in recreation areas.  The presence of wild geese does not present a sufficiently serious threat to the health and safety of inmates to invoke Eighth Amendment protections.  Geese are migratory birds that arrive in Ohio every spring and leave in the fall.  They can be found throughout the State, on private and public lands.  They are a federally protected species under the Migratory Bird Treaty Act of 1918, 16 U.S.C. §§ 703–712, making it a violation of federal law to harm the geese, goslings, nests, and eggs.  While they may be disruptive, their presence creates discomfort, aggravation and annoyance.  They do not produce the type of serious threat to health and safety that the Eighth Amendment addresses.

Also, Plaintiff claims that Lake Erie Correctional contains black mold and asbestos.  He provides no other allegations about these conditions, such as where they might be found, how prevalent they are, or whether he was exposed to the in a sufficient to make health effects possible.  He does not allege that these conditions are present in areas where he is housed, eats, exercises, or otherwise spends time. Plaintiff provides so little factual information that it is difficult to determine whether he is personally in any real danger from these conditions.

Further, Plaintiff fails to allege facts to suggest that any of the Defendants was personally deliberately indifferent to his health and safety.  Plaintiff claims that in response to his grievances, the Institutional Inspector told him that the units are

inspected daily by unit staff and the Warden's administrative staff. Therefore, he should address his concerns with his Unit Manager. He states that he personally showed the Core Civic President, the Warden, and the Safety and Sanitation Officer these conditions every weekday from February 22, 2024 through July 2, 2024. (ECF No. 1, PageID #16.)

Core Civic owns and operate 93 private prison facilities across the United States. Mr. Hininger is the President and CEO of Core Civic working from the corporate office in Tennessee. He oversees the administration of all of 93 facilities. Construing the allegations of the complaint as true, Plaintiff suggests that Mr. Hininger focused his attention on Lake Erie Correctional and spent every weekday for four and one half months making daily inspections of the prison to monitor its conditions. If true, those facts might show deliberate indifference to the conditions of confinement at the prison. But they also show that Mr. Hininger had great concern with the prison's conditions—nearly the opposite of deliberate indifference. Perhaps he or others were negligent in failing to remediate the conditions. But negligence is not deliberate indifference. And no other allegations in the complaint make out a showing of deliberate indifference.

Similarly, Plaintiff alleges that Warden Mackey and Mr. Dunbar accompanied Mr. Hininger on these inspections every weekday for four and a half months to monitor the conditions at the prison. Again, construing Plaintiff's allegations as true, this does not suggest deliberate indifference to conditions of confinement. He does

not allege any other facts pertaining to Warden Mackey or Mr. Dunbar. Plaintiff fails to state a claim for relief under the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** this action pursuant to 28 U.S.C. §1915(e). Accordingly, the Court **DENIES AS MOOT** Plaintiff's motions for screening under the statute. (ECF No. 3; ECF No. 4; ECF No. 6.)

**SO ORDERED.**

Dated: October 22, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio